# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
No. 19-1807V
UNPUBLISHED

| | |
|---|---|
| CARL JOHNSON,<br><br>        Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>        Respondent. | Chief Special Master Corcoran<br><br>Filed: October 27, 2022<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Statutory Six Month<br>Requirement  Influenza (Flu)<br>Vaccine; Shoulder Injury Related to<br>Vaccine Administration (SIRVA) |

*Bruce William Slane*, Law Office of Bruce W. Slane, P.C., White Plains, NY, for Petitioner.

*Mark Kim Hellie*, U.S. Department of Justice, Washington, DC, for Respondent.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]

On November 26, 2019, Carl Johnson filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a right shoulder injury related to vaccine administration ("SIRVA") from an influenza ("flu") vaccine he received on October 24, 2017. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished Fact Ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

Respondent has contested Petitioner's entitlement to compensation, arguing (among other things) that Petitioner did not suffer the residual effects of his injury for at least six months. For the reasons discussed below, however, I find that Petitioner has met the Act's "severity requirement" (although this determination is not dispositive of the overall claim).

## I.      Relevant Procedural History

On June 14, 2021 (about 19 months after the case was initiated), Respondent filed a Rule 4(c) Report arguing that Petitioner had not established entitlement to compensation, for several reasons. ECF No. 29. One of Respondent's contentions is that Petitioner cannot establish "that he suffered the residual effects or complications of his alleged shoulder injury for more than six months. Rule 4 Report at 5.[3]

Petitioner filed his Memorandum ("Memo.") regarding the statutory six-month requirement on December 9, 2021. ECF No. 35. Respondent filed his response memorandum ("Resp.") on January 10, 2022. ECF No. 36.

The matter is now ripe for adjudication.

## II.     Factual History

Petitioner was 56 years old when he received a flu vaccine in his right arm on October 24, 2017. Ex. 1 at 1; Ex. 2 at 1. Petitioner stated that he "immediately" felt "sharp, stabbing pain" during the vaccination, which progressed during the day to "throbbing, numbness, and cramping in his right shoulder." Ex. 3 at ¶5. He "rested and limited the use of his right arm, took ibuprofen" and thought that the symptoms would resolve on their own. *Id*. at ¶7.

On November 20, 2017, now 27 days after his vaccination, Petitioner visited his primary care physician ("PCP"), Dr. Kharel, complaining of pain and reduced range of motion in his right arm. Ex. 4 at 1-6. Dr. Kharel diagnosed frozen shoulder, noting that it was "unlikely related to the flu shot." *Id*. at 6. Petitioner was prescribed Tylenol #3 and referred to physical therapy. *Id.*

On November 29, 2017, 36 days after his vaccination, Petitioner presented for a physical therapy evaluation. Ex. 5 at 2. On exam, Petitioner demonstrated decreased range of motion, both active and passive, pain, and signs and symptoms of frozen shoulder. *Id.* He was advised to continue physical therapy twice a week for a period of 12

---

[3] Respondent further argues that Petitioner has not established that his pain occurred within 48 hours of his vaccination, but that issue was not briefed and is not decided here. Rule 4(c) Report at 7.

weeks. *Id* at 6. Mr. Johnson completed six more sessions of physical therapy through March 2, 2018. Ex. 6 at 11.

On December 4, 2017, Petitioner reported to orthopedic physician's assistant, Vinh Kevin Dang, for evaluation of his right shoulder. Ex. 6 at 2. Petitioner rated his pain at 5/10, which worsened with reaching overhead, behind the back, and sleeping on his right side. *Id.* His exam revealed reduced active and passive range of motion and positive impingement signs. *Id.* at 3. PA Dang diagnosed adhesive capsulitis, prescribed indomethacin, and scheduled Petitioner for a cortisone injection. *Id.* at 4. Petitioner received the injection the following day. Ex. 6 at 11.

On February 1 and 8, 2018, Petitioner contacted PA Dang to schedule a follow-up appointment and second cortisone injection. Ex. 6 at 12-13. Although an appointment was initially scheduled for March 14, 2018, the appointment did not happen. *Id*. Petitioner explained that he was "unable to go to the appointment because he could not continue to afford the co-pays." Ex. 11 at ¶8.

Other physical therapy sessions were scheduled, but Petitioner's seventh and final physical therapy appointment occurred on March 2, 2018, four months and six days after his vaccination. Ex. 5 at 54. The progress note from that visit states that Petitioner continued to have deficits in strength, restricted range of motion, particularly in internal and external rotation, and pain at the end range of passive range of motion in all motions. *Id.* at 54-55. Petitioner had completed only one of his physical therapy goals: being independent with his home exercise program. *Id.* The physical therapist also noted that Petitioner continued to have pain with movement, and that his range of motion was improving, but not within functional limits. *Id.* at 53, 55. He recommended further physical therapy as "medically necessary." *Id*.

Petitioner has stated that as of this time, he stopped his physical therapy treatment due to cost. Ex. 11 at ¶9. He nevertheless continued to experience "pain and discomfort in his right shoulder" plus reduced range of motion, and "continued to do the home exercise program that he as provided" for the next several months. *Id.* at ¶10-11. He similarly continued to take ibuprofen for pain, rest and limit the use of his shoulder, and use ice and heat for relief. *Id.* At some point during the summer of 2018, approximately 8-10 months after his vaccination, Petitioner states that he was unable to play golf due to "immense" pain in his right shoulder. *Id.* at ¶13.

In December 2018, Petitioner had two medical appointments with Dr. Kharel. The first, on December 6, 2018, focused on Petitioner's high blood pressure. Ex. 4 at 64. The record instructs Petitioner to "return to office for physical." *Id.* at 66. There is no mention of Petitioner's shoulder pain. Mr. Johnson returned four days later, on December 10, 2018, for an annual physical. Ex. 4 at 44. The record of that visit does not mention Petitioner's shoulder pain, indicates normal range of motion in both shoulders, and

3

indicates that Petitioner refused a flu shot. *Id.* Petitioner's blood pressure was taken in his right arm at both visits. Ex. 4 at 47, 66.

Almost five months later, on May 13, 2019, Petitioner returned to Dr. Kharel for a follow-up appointment. Ex. 4 at 30. Petitioner now (again) reported right shoulder pain and explained that he had tried "a few sessions" of physical therapy. *Id.* Dr. Kharel diagnosed him with "chronic shoulder pain" and referred him back to physical therapy. *Id.* at 33. There are no records of Petitioner receiving additional physical therapy.

There are no additional medical records reflecting treatment for Petitioner's right shoulder pain. Petitioner states that he continued to experience limitations in his right shoulder through at least December 3, 2021, the date of his supplemental affidavit. *See* Ex. 11. Petitioner avers that he has continued to favor his left arm over his right "whenever possible," requires assistance with tasks like yardwork and shoveling, and continues to do his home exercise program. *Id.* at ¶17.

### III. Authority

The Vaccine Act requires that a petitioner demonstrate that "residual effects or complications" of a vaccine-related injury continued for more than six months. Vaccine Act §11(c)(1)(D)(i). A petitioner cannot establish the length or ongoing nature of an injury merely through self-assertion unsubstantiated by medical records or medical opinion. §13(a)(1)(A). "[T]he fact that a petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013V, 2019 WL 978825, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014).

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19. And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV.     Finding of Fact

In order to establish at least six months of residual effects, Petitioner must demonstrate that his residual symptoms likely continued until at least April 24, 2018 -- assuming a Table-consistent onset (admittedly a disputed matter). The record establishes at a minimum that Petitioner had continuous treatment for his injury through his final physical therapy appointment on March 2, 2018 – four months and six days after his vaccination. Respondent argues that Petitioner has not provided preponderant evidence that his injury lasted beyond this date, because there was no mention of his shoulder pain in his medical records between March 2, 2018 and May 13, 2019, despite two intervening appointments. Resp. at 5. And Respondent maintains that Petitioner's statements regarding his ongoing symptoms "are not consistent with contemporaneous medical records in which he did not report any shoulder pain or exhibit a limited range of motion." *Id.* at 6.

Although there is little "hard" record evidence regarding Petitioner's symptoms between March 2, 2018 and May 13, 2019, there are several items of evidence that corroborate the contention that the claim meets the Act's severity requirement. First. Petitioner's treatment history allows the inference of ongoing sequelae. At the time of his last physical therapy treatment on March 2, 2018, Petitioner continued to demonstrate a need for additional formal physical therapy. Ex. 5 at 53-54. The physical therapist noted Petitioner's pain, as well as deficits in Petitioner's strength and range of motion. *Id.* Petitioner was not formally discharged from physical therapy and had not met the majority of his goals, but instead ceased it voluntarily for economic reasons alone. *Id.* at 55; Ex. 11 at ¶9. Indeed, Petitioner had also cancelled a scheduled orthopedist appointment on March 14, 2018 due to cost concerns. Ex. 6 at 12-13; *Id.* at ¶8.

Second, witness statements support a severity finding favorable to the Petitioner. Both Petitioner and his wife state that he continued to experience pain and reduced range of motion after he stopped treatment for his injury on March 2, 2018. Ex. 11 at ¶10; Ex. 12 at ¶6. He self-treated his symptoms during this period with ibuprofen, ice/heat, rest, and the home exercise program that he was given in physical therapy. Ex. 11 at ¶12; Ex. 12 at ¶6. The fact that a petitioner did not receive medical treatment for a solid/continuous six-month period does not necessarily mean that there are no remaining residual effects of the injury. *See Morine v. Sec'y of Health & Human Servs.,* No. 17-1013V, 2019 WL 978825 (Fed. Cl. Spec. Mstr. January 23, 2019).[4] And more broadly, Petitioner's

---

[4] This case is factually similar to *Morine*, in which the six-month requirement was deemed satisfied where the petitioner had treatment records through four months and ten days after vaccination, did not report shoulder pain at intervening visits for a period of approximately two years, but gave a credible explanation for why she did not report shoulder pain at those visits. *Morine,* 2019 WL 978825 at *4.

statements in his affidavits do not contradict the records themselves, but provide additional context of the time and circumstances. *See Kirby,* 997 F.3d at 1384.

Respondent argues that the two records from Petitioner's appointments with his PCP in December 2018 indicate that Petitioner's injury had resolved. Resp. at 5. Respondent highlights the fact that Petitioner was no longer taking the prescription medications he was prescribed for his shoulder pain and had his blood pressure taken in his right arm, without any mention of shoulder pain at that time. *Id.* at 6-7. But Petitioner explained that he did not mention his shoulder pain at the first visit because it was a visit focused solely on his blood pressure. Ex. 11 at ¶15. Petitioner believes he did mention his shoulder symptoms at the second visit when he refused an annual flu vaccination. *Id.* at 16. Petitioner mentioned his right shoulder pain to his PCP again in May 2019 at his annual physical, when he was referred back to physical therapy. Ex. 4 at 30-33. And in any event, even if it were true that Petitioner's SIRVA had fully resolved by the end of 2018, this would not prohibit a finding of proper severity based on an onset in October of the prior year.

Thus, after consideration of the entire record, I find that the evidence preponderates in Petitioner's favor on this issue. This does not, unfortunately, decide this matter, since other issues (like onset) remain in dispute. I will provide the parties a brief additional period of time to attempt settlement – but will seek to fully decide the Table claim thereafter if the present ruling does not prove helpful in getting the case informally resolved.

## Conclusion

Based on the record as a whole, Petitioner has established that he suffered the residual effects of his vaccine-related injury for at least six months as required by the Vaccine Act.

**The parties are encouraged to consider an informal resolution of this claim. Accordingly, by no later than <u>Tuesday, November 29, 2022</u>, Petitioner shall file a status report updating the court on the parties' settlement discussions. I shall set a final schedule for the claim's disposition if the parties represent that they cannot settle the matter.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

7